# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRIC OFALASKA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ACCOUNT:<br><br>jayinglez80<br><br>THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. | Case No.: 3:19-mj-00457-DMS<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, LISA WATSON, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been since January 2010.  In this assignment I have investigated a number of violations of United States Code.  I am currently assigned to the Violent Crime Squad in the FBI Anchorage Field Office, and specifically assigned to work violent crimes against children investigations, including but not limited to internet crimes against children, online enticement of children, child pornography possession and distribution, and commercial sexual exploitation of children. I have also conducted investigations of human trafficking, civil rights violations, and public corruption.  I have conducted and participated in numerous search warrants, arrest warrants, and interviews of people involved in various crimes.

OCT 1 0 2019

2. This affidavit is made in support of an application for a search warrant for information which is associated with account jayinglez80 (hereinafter SUBJECT ACCOUNT), which is stored at premises controlled by Snap Inc. ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which accepts service of process at 63 Market Street, Venice, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 3512(a), to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in the following paragraphs and in Attachment A, for evidence of crimes described in the following paragraphs and in Attachment B.

3. The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports and on my own investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause that evidence of violations of 18 U.S.C. §§ 1591, 922(g)(1), 1512(c), 2251(a), and 2252(a)(4)(B), are located in the SUBJECT ACCOUNT. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

OCT 1 0 2019

2                                                  3:19-mj-00457-DMS

4.     This Affidavit requests authority to search the business records maintained by Snap, Inc. for the content of wire and electronic communications within the SUBJECT ACCOUNT described in Attachment A, and to seize the items listed and incorporated in Attachment B.

5.     This Court has jurisdiction to issue the requested warrant pursuant to 18 U.S.C. § 2703(a) because it is a court with jurisdiction over the offense under investigation. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## RELEVANT STATUTES

6.     The following statutes are relevant to this affidavit:

a.     18 U.S.C. § 1591 prohibits a person from knowingly in or affecting interstate or foreign commerce from recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining by any means a person or benefiting, financially or by receiving anything of value, from participation in a venture which has engaged in an act described above, knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

b.     18 U.S.C. § 922(g)(1) states that it is unlawful for any person who has been convicted in any court, of a crime punishable by imprisonment for a term

OCT 1 0 2019

exceeding one year, to possess in and affecting interstate and foreign commerce, any firearm or ammunition.

      c.     18 U.S.C. § 2251(a) prohibits any person who employs, uses, persuades, induces, entices or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in of affection interstate or foreign commerce, or in any Territory or Possession of United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.

      d.     18 U.S.C. § 2252(a)(4)(B) provides, in relevant part, that any person who knowingly possesses, or knowingly accesses with intent to view any visual depiction that has been transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been so transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct, or any person who attempts to do so, shall be guilty of a federal offense.

*Snap, Inc.*

      7.     PROVIDER is the provider of the internet-based ACCOUNT identified as jayinglez80.

OCT 1 0 2019

4

3:19-mj-00457-DMS

8.     PROVIDER owns and operates a free access social networking website that can be accessed at http://www.snapchat.com. Snapchat is a cellphone application with which users can take photos, record short videos, add text and drawings to such photos or video, and send these contents to a selected list of recipients. Photos and videos sent over the application are known as "snaps." PROVIDER also enables users to communicate by text in a way similar to an instant-messaging application via chat and video chat features. Snapchat is one of the most popular applications for sending and receiving "self-destructing" messages, pictures, and videos.

9.     Users can set a time limit on their snaps that affect how long they may be viewed by the receiver of the snap. At the end of the viewing time, the snap disappears and the receiving party can no longer view it without use of the Replay feature. The Replay feature allows a user, once a day, to re-watch a snap he received, even though the time limit on the snap may expire. Users may use the Replay feature on one snap per day only.

10.     Snapchat users can send text messages to others using the Chat feature. Once a user leaves the Chat screen, messages viewed by both the sender and the receiver will no longer be visible. However, Snapchat does allow users to "save" specific messages, enabling portions of the conversation to be retained.

11.     "Our Stories" is a collection of user submitted "Snaps" from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event. For example, multiple

OCT 1 0 2019

5                                    3:19-mj-00457-DMS

Snapchat users at an event could each contribute to the same "Our Stories" collection by sharing their snaps, even if they do not know each other. Users can also view "Our Stories" events, even if they are not actually present at the event by subscribing to the story. In addition to "Our Stories," a Snapchat user can keep a photo/video diary using the "Story" feature. Each snap in a "Story" documents the user's experience. Based on the user's privacy settings, the photos and videos added to a "Story" can be viewed either by everyone on Snapchat or by the user's friends only. Stories are visible to other users for up to twenty-four hours.

12.     Snapchat "Our Stories" are collections of Snaps submitted from different users throughout the community. "Our Stories" connected to a specific location may be selected to appear on "Snap Map." "Snap Map" aggregates stories based on geolocation. It also allows users to share their locations with friends. If a user is sharing their location on "Snap Map," it is updated every time the Snapchat app is opened. A user's specific location will be visible on "Snap Map" for several hours before it is deleted. General location information may be retained longer, but it is subject to regular deletion.

13.     Snapchat also allows users to save sent or unsent "snaps" and posted "Stories," photos, and videos to "Memories," which is Snapchat's cloud-storage service. A user can also edit and send Snaps as well as create "Stories" from the saved "Memories." The "Memories" will be saved by Snapchat until deleted by the user.

OCT 1 0 2019

Case 3:19-mj-00457-DMS   Document 5-1   Filed 10/10/19   Page 6 of 25

14.     Snapchat also provides users with the ability to video chat with each other via the application.

15.     Snapchat users may create a list of Friends by which they can identify other Snapchat users for the purposes of sending and receiving information. Users may search for and add Friends by a number of methods, including username, the user's cellphone address book and other methods allowed by the application.

16.     While a Snapchat communication may disappear, the record of who sent it and when still exists. PROVIDER records and retains information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, PROVIDER stores the number of messages exchanged, information concerning which users most communicated with a specific account, and a particular message's status, including if and when the message was opened and whether the receiver used the native screen capture function of his device to take a picture of the snap before it disappeared (screenshot notifications).

17.     PROVIDER asks users to provide basic contact and personal identifying information to include date of birth. When a user creates an account they make a unique Snapchat username as well as a display name, which is not unique. The username and display name are the names visible to other Snapchat users. An e-mail address is required to register a Snapchat account and a new user must also provide a mobile phone number. This phone number is verified during the registration process.

OCT 1 0 2019

Snapchat sends an activation code which must be entered before proceeding with the registration step. However, a user may elect to bypass entering a phone number, so a phone number may not always be present in the user's account. PROVIDER also retains the account creation date, the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular log-ins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and experience, I know that even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

18. PROVIDER stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat. In the event the Snapchat user's application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

OCT 1 0 2019

19.     In my training and experience, in some cases, account users will communicate directly with an online service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

20.     As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the investigating officials to establish and prove each offense-element, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Snapchat account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, sent and received snaps (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the online service provider can show how and when the account was accessed or used. For example, providers typically log the IP addresses from which

OCT 1 0 2019

3:19-mj-00457-DMS

users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the criminal activity under investigation. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video uploaded). Finally, stored electronic data may provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in an account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

*Background on Pimp Culture and the Use of Cellular Phones*

21.     Through my training and experience, I am aware of the following traits of prostitution, and how the Internet and cell phones are used to further the activities of illegal prostitution:

a.     Individuals who, through enticement, intimidation, or force, enlist individuals to become prostitutes, and who profit from the prostitution of others are called "pimps." Pimps are sometimes euphemistically referred to as "management."

b.     Pimps, as well as, prostitutes who are not "managed" have embraced the internet as a means of advertising services and communicating with customers.

OCT 1 0 2019

Case 3:19-mj-00457-DMS   Document 5-1   Filed 10/10/19   Page 10 of 25

c.     Certain web sites have been created to facilitate communications between prostitutes and their clients. These web sites allow pictures to be posted as part of advertisements. I have viewed prostitution advertisements on these web sites.

d.     Subjects who utilize the internet to post prostitution related advertisements on websites often use photographs in the advertisements. These photographs often show a nude or semi-nude female. These females are at times, under the age of 18 years old.

e.     Advertisements for prostitutes often contain codes for the services provided. For example the term "w4m" means women for men. The term "in-calls only" refer that the prostitute will be providing the location for the sexual transaction. The term "donation" is often used to mean the cost for the sexual transaction.

f.     Pimps attempt to avoid the attention of law enforcement through the high anonymity provided by the Internet.

g.     Most juvenile prostitutes have pimps. Prostitutes will often refuse to divulge the identity of their pimps to law enforcement. Most pimps often instruct their prostitutes on what to say and what not to say to law enforcement.

h.     Prostitutes are instructed by the pimp on how to detect undercover officers. When arranging "dates" with clients over the phone, prostitutes rarely discuss the details pertaining to the sexual acts that are to occur until they meet in person.

i.     The pimps at times use physical force and/or fear to control their prostitutes. They control the prostitutes' actions, and collect monies earned through

OCT 1 0 2019

Case 3:19-mj-00457-DMS   Document 5-1   Filed 10/10/19   Page 11 of 25

acts of prostitution.  The pimps facilitate the prostitution by transporting the prostitutes to locations where the prostitution occurs.  The pimps, at times, transport prostitutes across state lines for the purpose of prostitution.

       j.     Prostitutes and/or pimps often stay in motels/hotels while traveling. The prostitutes and pimps travel via rental vehicles, vehicles, airplane, or bus during their travels.  The pimps utilize the monies earned during acts of prostitution to purchase food, lodging, clothing and other items.

       k.     Pimps often possess firearms to assist in protecting and intimidating their prostitutes.

       l.     Some pimps sell drugs as another means to make money.  Pimps sometimes provide drugs to the prostitutes to suppress their appetites and to assist with the demands of prostituting for long periods of time.

       m.     Pimps can be either male or female.

       n.     The term "daddy" is commonly used by prostitutes when referring to their pimps.  The pimp's phone number is often programmed as "daddy" in the prostitute's cell phone.

       o.     Pimps often request or force their prostitutes to obtain tattoos of names and/or symbols that are related to the pimp's name or nickname.

       p.     Prostitutes utilize cellular telephones as a way to be contacted by clients.  These phone numbers are included in the advertisements that are posted on

OCT 1 0 2019

Case 3:19-mj-00457-DMS   Document 5-1   Filed 10/10/19   Page 12 of 25

various prostitution assisting web sites. Contact is made through phone calls, as well as email, text messages, and social media.

        q.      Pimps and their prostitutes communicate with each other through cellular phones regarding prostitution activity. Communication is made through phone calls as well as text messages.

        r.      Pimps and prostitutes communicate with others involved in the prostitution/pimp sub-culture either by voice calls, text messages, and social media regarding prostitution/pimp activities.

        s.      Pimps and their prostitutes use cellular telephone cameras to take photographs of the prostitutes used in the prostitution advertisements.

        t.      Pimps and their prostitutes use cellular telephones to transmit photographs to email accounts, social media accounts, and/or prostitution assisted internet sites.

        u.      Pimps and prostitutes use personal e-mail accounts to post their advertisements on prostitution assisting web sites.

        v.      It is common for individuals to carry cell phones, smart phones, tablets, and other similar devices on their person.

## **PROBABLE CAUSE**

*Identification of Minor Victim 1 and Jayshon Moore, aka China/Chyna*

        22.      The FBI first became aware of Minor Victim 1 in October 2017 as a possible victim of sex trafficking. Minor Victim 1 was fifteen years old at that time.

OCT 1 0 2019

The FBI was contacted by Office of Children Services and Whaley School regarding their concerns. Agents met with Minor Victim 1 and she reported she had been physically assaulted. She had bruises and reported neck pain and difficulty seeing out of one eye. Agents transported her to the hospital. At that time, Minor Victim 1 stated she was assaulted by "A" but would not provide any further details about the perpetrator or her situation.

23.     On December 26, 2018, Minor Victim 1 was interviewed by the FBI regarding a different sex trafficking case of indicted subject Tristan Grant. In that interview, Minor Victim 1 advised she worked for Grant along with two other minors. One of these minors, hereafter referred to as Minor Victim 2 was interviewed by the FBI on January 3, 2019. She stated she knew Minor Victim 1 and Minor Victim 1 was living with a pimp named China. She thought his real name was Jayshon and he was about thirty-five years old. Minor Victim 2 also stated China tried to pimp her out but did not provide any further information.

24.     In a *Mirandized* interview of Grant on December 12, 2018, Grant stated he knew Minor Victim 1 and she was being prostituted by her husband/pimp named China and her older sister. Grant has been indicted in *United States v. Grant*, Case No. 3:19-cr-00003 on two counts of Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g) and one count of Production of Child Pornography in violation of 18 U.S.C. § 2251.

OCT 1 0 2019

Case 3:19-mj-00457-DMS   Document 5-1   Filed 10/10/19   Page 14 of 25

25.     In interviews on December 17, 2018 and January 25, 2019 with Ajela

Banks, she stated Minor Victim 1 was working for a pimp named China and that he

"turned out" (got her started in prostitution) and got her addicted to drugs.  Banks has

been indicted on two counts of Production of Child Pornography in violation of 18

U.S.C. § 2251 and one count of Possession of Child Pornography in violation of 18

U.S.C. § 2252 in *United States v. Banks*, Case No. 3:19-cr-00005.

26.     On January 2, 2019, Minor Victim 1's older sister was interviewed.  She

stated Minor Victim 1 was currently in a romantic relationship with Jayshon Moore,

who is also known as China.

27.     On June 7, 2019, Anchorage Police Department (APD) was called to

Moore's residence for a report of a female screaming.  Moore told officers that his

girlfriend, Minor Victim 1, was upset with him, threw items, and broke a table.  Minor

Victim 1 admitted she caused the damage. Minor Victim 1 told officers she had been

dating Moore for two years but didn't move into his residence until three months ago.

Minor Victim 1 called Moore a baby killer and said he made her get an abortion.  Minor

Victim 1 told officers Moore pushed her into a dog kennel, injuring her head and also

pushed her down the stairs outside the apartment.  Minor Victim 1 was arrested and

during transport to McLaughlin Youth Center (MYC) bit one of the officers in the hand.

Minor Victim 1 was charged with DV Criminal Mischief 5, Resisting Arrest, and

Assault.  Minor Victim 1 is currently in custody at MYC.

OCT 1 0 2019

Case 3:19-mj-00457-DMS   Document 5-1   Filed 10/10/19   Page 15 of 25

28. On June 11, 2019 Minor Victim 1 was interviewed by the FBI at MYC. During this interview, Minor Victim 1, provided the following information:

29. Minor Victim 1 stated she has been with Moore for three years. She met him through her older sister. Minor Victim 1 was 14 years old when she first met Moore. Minor Victim 1 initially told Moore she was 18 years old but Moore learned her true age when she was 15 years old. Minor Victim 1 referred to Moore as her husband.

30. Minor Victim 1 stated on the day of her arrest, Moore woke her up trying to give her some clear (methamphetamine). She got up and saw her cigarettes were gone and got angry with Moore. Minor Victim 1 stated Moore was angry with her because she would not put her heals on and walk Spenard Road in Anchorage, Alaska. Minor Victim 1 stated Moore makes her walk up and down Spenard Road as punishment if she does something bad.

31. Minor Victim 1 stated she does not have a quota of money or dates but has to make money to give to Moore to pay the rent. She stated she has three weeks to make approximately $1,000. Minor Victim 1 stated if she does not get enough dates online she has to walk Spenard Road.

32. Minor Victim 1 has posted on www.skipthegames.com for dates. She does in-calls (customer comes to her location) and car dates. Minor Victim 1 set up her

OCT 1 0 2019

16                                              3:19-mj-00457-DMS

profile on Skip the Games and posted. Moore didn't know how to do that. She said she posted under the name Coffee.

33.     Minor Victim 1 initially stated she started working for Moore three months ago but later stated it was a year ago when she was 15 years old. Moore drove Minor Victim 1 to Spenard to walk and do dates in cars. Moore found dates for her and charged $140 for half hour and $250 for an hour. Sex acts such as oral sex and hand jobs were $80 to $100. Customers who paid $200 or $250 could get whatever sex act they wanted. Minor Victim 1 used condoms during sex with customers. Minor Victim 1 gave all of the money from dates to Moore.

34.     Minor Victim 1 stated she wasn't being completely honest about her history with Moore because she loved him. Minor Victim 1 stated she did ten dates for Moore and all of the other dates were on her own. She also stated she did prostitution dates for him in the past but recently stopped because she didn't want to do dates anymore and only wanted to be with Moore.

35.     Minor Victim 1 stated Moore has had other females working for him. At one point she was living at her dad's house and Moore told her the only way she could come back to him was if she "ho'd" for him.

36.     Minor Victim 1 also stated Moore deals drugs such as methamphetamine and crack. She has done drug runs for him and sold cocaine and methamphetamine for him.

OCT 1 0 2019

37.     Minor Victim 1 stated that Moore gave her methamphetamine to get her up for dates.  If she didn't get up, he would make her put heals on and walk Spenard with no drugs in her system.  Minor Victim 1 also stated Moore has physically assaulted her.

38.     Minor Victim 1 said Moore had guns in his home and in the storage outside at his house.  Minor Victim 1 said he had other guns around his house.  She stated she has hid guns for him around the house. For example, when the police came she put a gun under the mattress.  She stated he has handguns and rifles.

*Interview of Minor Victim 1 on July 29, 2019*

39.     On July 29, 2019, Minor Victim 1 was interviewed at the Fairbanks Youth Facility.  During that interview, Minor Victim 1 provided the following information:

40.     Minor Victim 1 had photos of Minor Victim 2 on her phone and Moore saw them.  Moore instructed Minor Victim 1 to bring Minor Victim 2 to him, which she did.  Moore was aware of Minor Victim 2's age because Minor Victim 1 told him. Minor Victim 2 worked (did dates) for Moore for a couple of days.  Minor Victim 1 became jealous of Minor Victim 2 and kicked her out.

41.     Minor Victim 1 agreed to review various images from her Snapchat account.  These images were obtained by the FBI pursuant to Federal search warrant case number 3:19-mj-00178-MMS, which was executed on Snap, Inc.

OCT 1 0 2019

42.     Many of the images were sexually explicit, showing various sex acts between Minor Victim 1 and Moore.  Minor Victim 1 said many of the pictures in her Snapchat account were photographed by Moore, using one of his iPhones, and subsequently sent to her Snapchat account.  She also sent the same type of explicit photos to Moore.  Moore had instructed her on how to pose prior to either of them taking the photos.  Moore would also upload pictures such as these to various sites to advertise for sex (for both Moore and Minor Victim 1).

43.     Several photos of Minor Victim 1 performing oral sex on Moore (Minor Victim 1 identified the male in the photo as Moore) had a file name including SUBJECT ACCOUNT as well as Minor Victim 1's Snapchat account username.

44.     Several videos from Minor Victim 1's Snapchat account showed her performing oral sex on Moore, where both of her hands were visible in the video, her eyes were closed, the camera wasn't moving, and the focus of the video was her face, which would indicate she did not take the video herself.  Minor Victim 1 also indicated these videos were recorded by Moore.

45.     Minor Victim 1 identified at least one photo from her Snapchat account showing Moore holding a gun.  She knew that gun was real because she knew him to have shot the firearm.

46.     Minor Victim 1 was asked what Jayshon Moore's account username was. She replied it was j.moore8077.  It was not clarified if she meant j.moore8077 or jay.moore8077 and she did not provide any further information.

OCT 1 0 2019

Case 3:19-mj-00457-DMS   Document 5-1   Filed 10/10/19   Page 19 of 25

47.     In a review of chats between Minor Victim 1 and SUBJECT ACCOUNT,
Minor Victim 1 refers to the user of SUBJECT ACCOUNT as "jay", "husband", and
"Chyna", as well as with terms of endearment. The user of SUBJECT ACCOUNT
refers to Minor Victim 1 as "wife", and uses her given name. The user also stated,
"YOU are Chyna%2C YOU are Settrip%2C YOU are ME". In interviews with the
FBI, Minor Victim 1 has referred to Moore as her husband. Sexually explicit images of
Minor Victim 1 and Moore were sent from Minor Victim 1's account to SUBJECT
ACCOUNT. In the review of the chats between Minor Victim 1 and SUBJECT
ACCOUNT, it is apparent the two individuals are in a romantic relationship together.
Based on the content of the reviewed chats and previous interviews of Minor Victim 1,
it can be concluded that Jayshon Moore is the user of SUBJECT ACCOUNT.

48.     In the review of Minor Victim 1's Snapchat account, there were no
contacts listed as j.moore8077 or anything similar. SUBJECT ACCOUNT was the
only one that had content consistent with the nature of Minor Victim 1 and Jayshon
Moore's relationship, as described in multiple interviews of Minor Victim 1.

49.     Your affiant searched the publically accessible Snapchat application for
usernames j.moore8077 and jay.moore8077, both returning zero results. A search for
SUBJECT ACCOUNT was done, showing one result with the associated display name
of "Jayshon Moore". In Minor Victim 1's above statement that j.moore8077 was
Moore's account username, it is possible this could be the username for another
Snapchat account or other social media account Moore has or had used in the past.

OCT 1 0 2019

Case 3:19-mj-00457-DMS   Document 5-1   Filed 10/10/19   Page 20 of 25

There is no indication that Minor Victim 1 has communicated with account j.moore8077 or jay.moore8077.

*Jayshon Moore*

50.     In 2010, Jayshon Moore (born March 8, 1983) was convicted by the US District Court in Anchorage of Felon in Possession and Drug Distribution. He was sentenced to 87 months incarceration and 36 months supervised release. Moore is currently on supervised release with US Probation.

*Snapchat preservation request*

51.     On August 22, 2019, a preservation letter was sent from the FBI to Custodian of PROVIDER to preserve the data for account jayinglez80, to include PROVIDER's receipt of request. A receipt from PROVIDER regarding the request was received the next day, showing a submission number of 51072237.

*Summary of Probable Cause*

52.     I submit that there is sufficient probable cause to believe that the SUBJECT ACCOUNT, which are identified in Attachment A, contain fruits, contraband, and evidence of violations of 18 U.S.C. §§ 1591, 922(g)(1), 2251(a), and 2252(a)(4)(B); and there is sufficient probable cause to seize the items described in Attachment B. I reach this conclusion for the following reasons:

        a.      <u>Sex Trafficking</u>: Minor Victim 1, Tristan Grant, and Ajela Banks gave statements to law enforcement in which they described Minor Victim 1 engaging

OCT 1 0 2019

in acts of prostitution and Moore being Minor Victim 1's pimp. Minor Victim 1 and Moore's associated began in or around October 2017. Moore had transported Minor Victim 1 for the purpose of doing dates and Minor Victim 1 has given Moore money from her acts of prostitution. Minor Victim is under the age of 18.

        b.     <u>Possession of Firearms</u>: Moore is a known felon. Minor Victim 1 reported Moore always had guns. Minor Victim 1 identified at least one photo from her Snapchat account which showed Moore holding a gun.

        c.     <u>Production and Possession of Child Pornography</u>: Minor Victim 1 has provided information to law enforcement about sex acts occurring between herself and Moore that have been filmed/photographed. Some of these photos/videos have been exchanged via Snapchat between Minor Victim 1 and Moore.

        d.     For purposes of clarification, the SUBJECT ACCOUNT is believed to be utilized by Moore. This is based on the nature of the chats with Minor Victim 1 and the SUBJECT ACCIUNT, and interviews with Minor Victim 1, where she described her relationship with Moore.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

53.     Evidence and fruits of violations of 18 U.S.C. §§ 1591, 922(g)(1), 2251(a), and 2252(a)(4)(B), will be seized by law enforcement from the SUBJECT ACCOUNT upon receipt of the information from the PROVIDER as follows:

        a.     All subscriber information, including:

             i.     names, email addresses, and screen names;

OCT 1 0 2019

ii.     addresses;

iii.    detailed billing records or records of session times and durations;

iv.    length of service (including start date) and types of service utilized; telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

vi.    the means and source of payment for such service (including any credit card or bank account number).

b.    For the period of October 1, 2017 to present, all transactional information, including:

i.    logs of Internet Protocol ("IP") address connections, including dates, times, and time zones;

ii.    address books;

hi.    buddy lists; and

iv.    account history, including contacts with support services and records of actions taken online by the subscriber or the PROVIDER support staff in connection with the service.

c.    For the period of October 1, 2017 to present, the contents of electronic or wire communications held in the SUBJECT ACCOUNT identified in Attachment B, including:

OCT 1 0 2019

i. all electronic or wire communications with any websites or online services posting advertisements for prostitution services, or through which escort services are known by law enforcement to operate; or any known or potential victim in regards to engaging in sexual activity for which any person can be charged with a criminal offense (including e-mail text, attachments, and embedded files) in electronic storage by the PROVIDER, or held by the PROVIDER as a remote computing service (if any), within the meaning of the Stored Communications Act;

ii. all photos, files, data, or information in whatever form and by whatever means they have been created or stored relating to any websites or online services posting advertisements for prostitution services, or through which escort services are known by law enforcement to operate; or any known or potential victim in regards to engaging in sexual activity for which any person can be charged with a criminal offense.

54. I ask that the Court order the PROVIDER to deliver the information set forth above within 10 days of the service of this warrant and that the PROVIDER send the information electronically. In the event that electronic delivery is not available, I ask that service be provided via facsimile and United States mail.

OCT 1 0 2019

## CONCLUSION

55.     Based upon the above information, there is probable cause to believe that violations of 18 U.S.C. §§ 1591, 922(g)(1), 2251(a), and 2252(a)(4)(B), have been violated, and that property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, is located in the SUBJECT ACCOUNT. This Affiant requests authority to seize such material.

56.     Based upon the foregoing, this Affiant respectfully requests that this Court issue a search warrant for the SUBJECT ACCOUNT, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.


LISA WATSON
Special Agent, FBI
Child Exploitation Task Force


Subscribed and sworn to before me this
___10___ day of October, 2019.


DEBORAH M. SMITH
Chef United States Magistrate Judge
District of Alaska
Anchorage, Alaska

OCT 1 0 2019